IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROCKY A. HATFIELD,              )     CASE NO. 5:09CV0095
                                )
            Petitioner,         )
                                )
       v.                       )     JUDGE ADAMS
                                )
                                )     MAGISTRATE JUDGE VECCHIARELLI
MARGARET BRADSHAW, Warden,      )
                                )     REPORT AND RECOMMENDATION
            Respondent.         )

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before

the court is the petition of Rocky A. Hatfield ("Hatfield") for a writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254 on January 14, 2009.  Hatfield is in the custody of the Ohio

Department of Rehabilitation and Correction pursuant to journal entry of sentence in the

case of *State of Ohio vs. Hatfield*, Case Nos. CR-2006-12-4361(A) (Summit County 2006)

and CR-2007-01-0246 (Summit County 2007).  For the reasons set forth below, the court

should dismiss Hatfield's petition.

I.

The state appellate court reviewing Hatfield's conviction during his initial appeal

found the following facts to be relevant to his case:

> {¶ 2} In December 2006, Mr. Hatfield's girlfriend was arrested for attempting
> to use a stolen credit card.  Police officers went to the duplex in which she and Mr.
> Hatfield lived, and Mr. Hatfield allowed them to search for anything purchased with
> the credit card.  In the basement of the duplex, they found a power washer and a

new Kenmore dishwasher.  The power washer had the name "M.P. Neiman" scratched into its frame.  Mr. Hatfield told the police that he had bought the items from a friend named Roger for $100 each.

{¶ 3} The police investigated whether the power washer and dishwasher were stolen, and located an individual named Maurice Neiman, who owned several rental properties.  Mr. Neiman told them that a power washer and a new Kenmore dishwasher recently had been stolen from one of his properties.  He also told them that one of his employees, who had keys to his properties, often worked with a man named Roger.  The police arrested Mr. Hatfield for receiving stolen property the following day.  At the time of his arrest, he told the police that he was only storing the power washer and dishwasher for one of his friends.

{¶ 4} Later that month, police responded to a situation at a department store and arrested Mr. Hatfield for allegedly stealing a hat.  When they searched him, they found two OxyContin pills and a Vicodin pill.  A couple of weeks later, police officers went to Mr. Hatfield's duplex to arrest him on multiple warrants.  As they entered his unit, he used a hatch in the attic to crawl through to his neighbor's unit.  When police realized that there was a passage between the units, they received permission from the neighbor to search her unit and found Mr. Hatfield in her bedroom.

{¶ 5} A month later at the county jail, Mr. Hatfield punched an inmate named Dale Nye in the mouth.  The last time Mr. Nye had seen Mr. Hatfield outside of the jail was to buy drugs.  Mr. Nye had gone to Mr. Hatfield's home, had given him money, and had waited while he left to buy the drugs.  When Mr. Hatfield did not return, Mr. Nye concluded that he had stolen his money.  He, therefore, took a video game system from Mr. Hatfield's home as restitution.  Mr. Nye testified that Mr. Hatfield was angry because the video game system belonged to his daughter

{¶ 6} The Grand Jury indicted Mr. Hatfield for receiving stolen property, possession of drugs, aggravated possession of drugs, burglary, theft, and obstructing official business.  It separately indicted him for felonious assault.  Before trial, Mr. Hatfield moved for separate trials, but the trial court denied his motion.  Mr. Hatfield also requested a self-defense instruction, but the trial court denied his request because he had not testified.  A jury convicted Mr. Hatfield of receiving stolen property, possession of drugs, aggravated possession of drugs, theft, obstructing official business, and felonious assault.

*State v. Hatfield*, 2008 WL 2122352, at *1-*2 (Ohio App. May 21, 2008).

Prior to trial, Hatfield moved for a separate trial on each indictment.  The court

denied his motion at pre-trial hearings.  Upon his convictions, the court sentenced Hatfield

to an aggregate of six years' imprisonment in case no. CR-2006-12-4361(A) and 11

2

months' aggregate and consecutive imprisonment in case no. CR-2007-01-0246.  The only

count in case no. CR-2007-01-0246 was felonious assault.

Hatfield timely appealed his conviction in both cases.   Hatfield raised three

assignments of error in his appeal:

### ASSIGNMENT OF ERROR NO. I

The trial court committed reversible error when it denied appellant's motion for a jury instruction of self-defense on the grounds that the defendant did not take the stand to testify in his defense.

### ASSIGNMENT OF ERROR NO. II

The trial court committed reversible error when it denied appellant's motion for separate trials.

### ASSIGNMENT OF ERROR NO. III

Appellant's conviction of receiving stolen property and felonious assault was against the manifest weight of the evidence.

(Punctuation altered from the original).   On May 21, 2008, the state appellate court

overruled Hatfield's assignments of error and affirmed the judgment of the trial court.

Hatfiled timely appealed the state appellate court's decision.  In his memorandum

in support of jurisdiction, Hatfield asserted three propositions of law:

Proposition of Law No. I:  The trial court committed reversible error when it denied appellant's motion for jury instruction on self-defense on the grounds that defendant did not take the stand to testify in his defense.  In violation of rights secured under the 5th, 6th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

Proposition of Law No. II:  The trial court committed reversible error when it denied appellant's motion for separate trials.  In violation of the Fourteenth Amendment to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

Proposition of Law No. III:  Appellant's conviction of [sic] receiving stolen property and felonious assault was against the manifest weight of the evidence.

3

(Punctuation in the original).  On October 15, 2008, the Ohio Supreme Court dismissed Hatfield's appeal as not involving any substantial constitutional question.

Meanwhile, on July 9, 2008, Hatfield applied pursuant to Ohio App. R. 26(B) ("R. 26(B)") to reopen his direct appeal.  In his application, Hatfield asserted that his appellate counsel had been ineffective:

> Defendant-Appellant was denied effective assistance of appellate counsel on direct appeal, when counsel failed to raise and argue ineffective assistance of trial counsel, when the record clearly shows that trial counsel failed to re-file a Crim. R. 14 motion, thereby, foreclosing review of a prejudicial reversible error, which amounts to plain error.  In violation of the Fourteenth Amendment of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

(Punctuation in the original).  On July 23, 2008, the state appellate court denied Hatfield's application, finding that even if trial counsel's performance had been ineffective, Hatfield had not shown that he was prejudiced by that performance.  Consequently, the court continued, the performance of appellate counsel was not ineffective for failing to argue that trial counsel had been ineffective or for failing to argue that the trial court's failure to order separate trials was plain error.  On July 31, 2008, Hatfield moved for leave to respond to appellee's opposition brief.  The state appellate court construed this motion as a motion to reconsider and denied that motion on August 19, 2008.

Hatfield timely filed in the Ohio Supreme Court a notice of appeal from the denial of his application pursuant to R. 26(B).  In his memorandum in support of jurisdiction, Hatfield asserted a single proposition of law:

> Proposition of Law No. I:  Appellant Rocky A. Hatfield was denied effective assistance of counsel on direct appeal, when counsel failed to raise and argue ineffective assistance of counsel, when the record clearly shows that trial counsel failed to re-file a Crim.R. 14 motion, thereby, foreclosing review of a prejudicial, reversible error, which amounts to plain error.  In violation of the 6th & 14th Amendments to the United States Constitution and Article I, Sections 10 and 16 of

4

the Ohio Constitution.

(Punctuation in the original).  On October 29, 2008, the Ohio Supreme Court dismissed his

appeal as not involving any substantial constitutional question.

On July 31, 2009, Hatfield filed in this court a petition for a federal writ of habeas

corpus.  Hatfield asserts nine grounds for relief in his petition:

**Ground one:**  Separate trials.

Supporting Facts:  At trial, defense counsel filed motion to separate trials to keep
from creating prejudice toward petitioner, and included sufficient information for the
court to make a decision.  The trial court refused the request.

**Ground two:**  Right to testify.

Supporting Facts: Petitioner assert[s] he had a right to testify, and a right not to
testify, and was denied these rights by the trial court's refusal to separate the trials.

**Ground three:**  Self-defense jury instructions.

Supporting Facts: Petitioner's trial counsel argued for self-defense jury instructions,
but the trial judge refused the request.

**Ground four:**  Ineffective assistance of counsel.

Supporting Facts:  Petitioner argued in a motion to re-open appeal, that the court-
appointed appellate counsel was ineffective for failing to raise that trial counsel had
been ineffective for failing to preserve issues for appellate review, since the Court
of Appeals ruled that the issue of separate trials was forfeited.

(Capitalization, spelling, and punctuation altered from the original).  Respondent filed an

Answer/Return of Writ on May 26, 2009.  Doc. No. 4. Hatfield filed a Traverse on June 10,

2009. Doc. No. 5.  Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

A judge in the Court of Common Pleas of Summit County, Ohio sentenced Hatfield.

5

Hatfield filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Summit County is within this court's geographic jurisdiction. This court has jurisdiction over Hatfield' petition.

*B.     Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Hatfield's claims involve legal issues which can be independently resolved without additional factual inquiry.

*C.     Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional

6

context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted). Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits. 28 U.S.C. § 2254(b)(2).

Hatfield has no state remedies available for his claims. Because no state remedies remain available to him, Hatfield has exhausted state remedies.

D.     *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to

7

respondent's failure to raise them there as required by state procedure." *Wainwright v.*

*Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a

petitioner fails to present fairly to the highest state court his claims in a federal

constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*,

459 U.S. 4 (1982).  Moreover, a failure to present a claim to the highest court in the state

deprives a federal court hearing a habeas petition of jurisdiction on that issue.  *See*

*McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If the state argues that a petitioner has procedurally defaulted his claims, the court

must conduct a four-step analysis to determine whether the petitioner has indeed defaulted

and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if

petitioner demonstrates that not excusing the default "will result in a fundamental

8

miscarriage of justice." *Coleman*, 501 U.S. at 750.

Respondent contends that Hatfield has defaulted his first three grounds for relief: the refusal of the trial court to grant Hatfield's motion for separate trials, a denial of his right to testify in his own defense due to the failure to permit separate trials, and a refusal to give jury instructions for self-defense.  Hatfield denies that he has defaulted these claims.

*1.    Ground one:  Overruling motion for separate trials*

Prior to trial, Hatfield moved for separate trials on each indictment, arguing that the indictment for assault would prejudice the jury against him with respect to the counts in his first indictment.  The court denied this motion at pre-trial hearings.

The state appellate court reviewing the corresponding state assignment of error found that Hatfield's motion to separate had been made pursuant to Ohio Crim. R. 14 ("R. 14"), as it asked for a separate trial for each indictment.  According to Ohio law, a R. 14 motion to sever that is "not renewed either after the state rested or at the conclusion of all of the evidence . . . is waived."  *State v. Owens,* 51 Ohio App.2d 132, 146, 566 N.E.2d 1367, 1376 (1975) .  The state appellate court found that Hatfield had failed to renew the R. 14 motion after the prosecution rested or at the close of evidence.  Consequently, the state appellate court found that the issue was waived.[1]

The state appellate court identified a state procedural rule that Hatfield failed to follow and enforced that rule by finding the issue waived.  Hatfield does not argue that Ohio courts fail to enforce this rule.  Ohio's requirement that defendants properly object

---

[1]  Hatfield cites federal cases holding that a defendant need not renew a motion for separate trials to preserve the issue.  Those cases rely on federal procedural law.  Federal procedural law does not apply in state courts.

contemporaneously at trial is an adequate and independent ground on which Ohio can rely to foreclose a federal constitutional claim. *See Engle v. Isaac,* 456 U.S. 107 (1982); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000).

Hatfield argues that ineffective assistance of trial counsel was cause for the default of this claim. Ineffective assistance of counsel can serve as cause for a procedural default of other claims, *Williams v. Anderson*, 460 F.3d 789, 800 (6th Cir. 2006). Ineffective assistance of counsel may only serve as cause for a procedural default, however, if the ineffective assistance of counsel claim itself was not procedurally defaulted or unless cause and prejudice for such default exists. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000). Hatfield's claim of ineffective assistance of trial counsel was never raised in state courts as an independent claim. Hatfield cannot argue ineffective assistance of appellate counsel as cause for the default of his claim of ineffective assistance of trial counsel because neither trial counsel nor appellate counsel were ineffective. *See* the court's discussion of the merits of that claim in section III, *infra*.

For these reasons, Hatfield has procedurally defaulted his first ground for relief, and it should be dismissed.

2.      *Ground two:  Alleged denial of the right to testify*

Hatfield argues that the failure to adjudicate his indictments for receiving stolen property, possession of drugs, aggravated possession of drugs, theft, burglary, and obstructing official business separately from his indictment for felonious assault violated his right to testify on his own behalf. According to Hatfield, he did not want to testify in the indictment containing the theft offenses but did want to testify in the case containing the assault. By trying both indictments together, he claims that he was forced to choose to

10

exercise his right not to testify at the expense of his right to testify.

Hatfield first raised this claim in the pleading that the state appellate court construed as a motion to reconsider its denial of Hatfield's application to reopen pursuant to R. 26(B). The state appellate court found that Hatfield had forfeited this argument because he failed to raise this argument contemporaneously in his motion for separate trials or at the pretrial hearing addressing that motion.[2]

Again, the state appellate court identified a state procedural rule that Hatfield failed to follow and actually enforced that rule by finding the issue waived.  Hatfield does not argue that Ohio courts fail to regularly follow this rule.  As already noted, Ohio's requirement that defendants properly object contemporaneously at trial is an adequate and independent ground on which Ohio can rely to foreclose a federal constitutional claim. Hatfield again asserts ineffective assistance of trial counsel as cause for his default. However, as that claim has also been defaulted, it may not serve as cause to excuse his other defaults.  Consequently, Hatfield's second ground for relief should be dismissed as procedurally defaulted.

### 3.    Ground three:  Refusal to give a jury instruction for self-defense

Hatfield argues that the trial court erred under Ohio law in refusing to give an instruction for self-defense with respect to the indictment for assault.  Respondent argues that Hatfield has defaulted this claim because he failed to raise it in the state courts as a federal constitutional claim.

Fair presentment of a claim in a federal constitutional context requires a petitioner

---

[2]  The state appellate court also found that Hatfield had forfeited the claim because he failed to raise the issue in his original application to reopen.

11

to apprise the state courts that a claim is a federal claim, "not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner need not cite "'book and verse on the federal constitution,'" *Picard*, 404 U.S. at 278, to apprise state courts that his claim is based on federal law.  A petitioner fairly presents a federal claim to state courts by relying on relevant federal cases employing the constitutional analysis upon which petitioner relies, by relying on state cases employing a federal constitutional analysis in fact situations similar to his own, or by asserting the claim in terms so particular as raise the specific right protected by the Constitution. *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 193-94 (2d Cir. 1982)).  A petitioner does not fairly present a federal claim to a state court merely by presenting the facts underlying his claim for relief, *Picard,* 404 U.S. at 277, nor by making a general reference to a broad constitutional guarantee, such as due process, *Gray v. J.D. Nederland*, 518 U.S. 152, 163 (1996).  The petitioner must present argument or citations to cases which identify the substance of the particular analysis upon which petitioner relies in asserting his federal constitutional claim.  *Gray*, 518 U.S. at 162-63.  Moreover, "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).  Finally, fair presentment requires that any claim raised in federal court have been presented to the state courts as resulting from the same errors under the same legal theories described in the federal claim. *Pillette v. Foltz,* 824 F.2d 494, 497 (6th Cir. 1987).

Hatfield's brief on direct appeal makes no argument regarding a violation of federal

constitutional rights, cites no federal cases, cites no state cases addressing relevant violations of federal constitutional rights, and identifies no federal constitutional right at issue in the refusal to give an instruction for self-defense.  The only assertion Hatfield makes in his brief in any way related to a constitutional right is the passing comment that "the Trial Court abused its discretion when it failed to give a self-defense jury instruction on the grounds that the Appellant did not take the stand to testify in his defense, to the Appellant's prejudice and in violation of his constitutional rights."  Brief of Appellant-Defendant, Answer, Exh. 12, p. 14.  Hatfield does not identify which constitutional right is at issue; indeed, he does not identify whether he is referring to the Ohio or United States Constitution.  This is insufficient to fairly present a federal constitutional issue to a state court.[3]

Hatfield argued in his appeal to the Ohio Supreme Court that the failure to give an instruction for self-defense violated his rights under the 5th, 6th, and 14th Amendments to the United States Constitution.  Under Ohio law, however, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  *State v. Jester*, 32 Ohio St. 3d, 147, 154, 512 N.E. 2d 962 (1987); *see also Normand v. McAninch*, 2000 WL 377348, *5 (6th Cir. April 6, 2000) (finding that Ohio's rules requiring appellants to raise claims timely in the appellate court when possible before they can be considered by the state supreme court advance the state's interest in the regularity of criminal convictions and do not implicate federal law).  It is unlikely that the

---

[3] Indeed, Hatfield's argument in his habeas petition fails to state a federal claim, as it fails to identify a constitutional right violated by the failure to include an instruction for self-defense and fails to make an argument in support of an alleged violation of such a right.

13

Ohio Supreme Court would reach the merits of claims that were not raised in the underlying appellate proceeding. The Ohio Supreme Court declined jurisdiction over Hatfield's claim without opinion. Where the state courts are silent as to the reasons for denying a petitioner's claim, the Sixth Circuit has applied the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996). Consequently, this court presumes that the Ohio Supreme Court refused to hear Hatfield's constitutional argument regarding the refusal to instruct the jury as to self-defense because Hatfield failed to raise that argument in the state appellate court.

Hatfield failed properly to raise his third ground for relief in the highest court in the state as a federal constitutional claim. For this reason, Hatfield's third ground for relief should be dismissed as procedurally defaulted.

> 4.    *Ground four:  Ineffective assistance of appellate counsel for failing to argue that trial counsel's ineffectiveness in failing to renew his R. 14 motion to sever his two indictments resulted in a violation of Hatfield's right to testify on his own behalf*

Hatfield argues in his fourth ground for relief that appellate counsel failed to argue that trial counsel's ineffectiveness in failing to renew his R. 14 motion to sever his indictments violated his right to testify on his own behalf. Respondent argues that this claim was waived when Hatfield failed to raise it in his original application to reopen his direct appeal pursuant to R. 26(B).

Hatfield first raised this claim in the pleading that the state appellate court construed as a motion to reconsider its denial of his application to reopen his direct appeal. The state court found that he had waived the argument because he failed to include it in his original

14

application to reopen.  Ohio law prohibits parties from asserting in later-filed briefs arguments not timely made in previous briefs.  *Cardinal Federal Sav. and Loan Ass'n v. Cuyahoga County Bd. of Revision, et al.*, 44 Ohio St.2d 13, 18, 336 N.E.2d 433, 436 (1975).  The state appellate court cited this rule in finding that Hatfield had waived this claim.  Such a procedural rule advances Ohio's interest regularity of criminal convictions and does not implicate federal law.  *See, e.g., Normand*, 2000 WL 377348 at *5. Consequently, it is an adequate and independent state rule sufficient to foreclose federal habeas review.  Hatfield does not argue that Ohio courts fail to enforce this rule, nor does he show cause for and prejudice from his default of this claim.  Consequently, Hatfield has defaulted that portion of his fourth ground for relief which asserts that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in not renewing Hatfield's R. 14 motion to sever, thus violating his right to testify on his own behalf.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on

an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* at 405. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001). The court will examine Hatfield's remaining grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

*A.     Ground four:  Whether Hatfield was denied the effective assistance of appellate*

16

*counsel*

Hatfield contends in his fourth ground for relief that he was denied the effective assistance of appellate counsel when counsel failed to argue that Hatfield had been denied the effective assistance of trial counsel.  According to Hatfield, trial counsel was ineffective for failing to renew the R. 14 motion to separate adjudication of his two indictments, thus resulting in unfair prejudice.

Defendants have a right to appointed counsel for the first appeal of right.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  An appellant has no constitutional right to have every nonfrivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues on appeal are properly left to the sound judgment of counsel.  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002 (1990).  The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), is applicable to claims of ineffective assistance of appellate counsel.  *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).

Petitioner's counsel was ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a

17

breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.  *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."  *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be

18

prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Hatfield argues in his fourth ground for relief that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel on appeal.  Hatfield contends that trial counsel was ineffective for failing to renew the R. 14 motion to separate adjudication of his two indictments, thus resulting in unfair prejudice.

Hatfield raised this claim in his application to reopen his direct appeal pursuant to R. 26(B).  The state appellate court reviewing this claim noted that a defendant moving pursuant to R. 14 to sever has the burden of demonstrating that he was prejudiced by the joinder.  If the evidence of each crime is simple and distinct, however, then a defendant is not prejudiced by joinder of the two crimes.  In Hatfield's case, the trial court found that the evidence of receiving stolen property was the stolen property in Hatfield's possession, one

19

item of which had the victim's name scratched into it; evidence of drug possession was OxyContin and Vicodin in Hatfield's possession; evidence of theft was possession of a hat he had not purchased when arrested at a mall; evidence of obstructing police business was his attempt to avoid police be crawling through a hatch into a neighboring apartment; and evidence of assault was Hatfield's punching another inmate, an act which he did not deny. The trial court concluded that the evidence for each crime was sufficiently simple and direct that Hatfield was not prejudiced by their joinder.  The state appellate court also noted that the jury found Hatfield not guilty of burglary, thus demonstrating that the jury could separate the charges and was not unduly prejudiced against him.  The court concluded for these reasons that Hatfield was not prejudiced by the joinder, nor was he prejudiced by trial counsel's failure to renew the R. 14 motion.  Consequently, the state appellate court concluded, Hatfield was not prejudiced by appellate counsel's failure to argue ineffective assistance of trial counsel in this respect.

Hatfield does not demonstrate by clear and convincing evidence that the state appellate court's determination of the facts was unreasonable, nor does he demonstrate that the court's application of Ohio law was erroneous.  As Hatfield has failed to demonstrate that the trial court's denial of his motion to sever was erroneous, he has failed to demonstrate that his trial attorney's failure to object to this ruling was in any way deficient. Moreover, Hatfield fails to show that he was prejudiced by his attorney's decision. This would be particularly difficult to do in the instant case because the jury demonstrated by finding Hatfield not guilty of burglary that it was able to set aside any prejudice it may have had against Hatfield and examine the facts objectively.  Consequently, Hatfield has failed to demonstrate that trial counsel was ineffective.

20

Because Hatfield has failed to demonstrate that trial counsel was ineffective, he has also failed to demonstrate that appellate counsel's performance was in any way deficient or prejudicial for failing to raise on appeal ineffective assistance of trial counsel for failing to object to the trial court's denial of the motion to sever.  Consequently, Hatfield has not demonstrated that appellate counsel was ineffective.

For these reasons, the remainder of Hatfield's fourth ground for relief should be dismissed as without merit.

IV.

For the reasons given above, Hatfield's first, second, and third grounds for relief should be dismissed as procedurally defaulted.  That portion of Hatfield's fourth ground for relief, asserting ineffective assistance of appellate counsel for failing to argue trial counsel's ineffectiveness in not renewing the R. 14 motion, thus prejudicing his right to testify in his own defense, should also be dismissed as procedurally defaulted.  The remainder of Hatfield's fourth ground for relief should be dismissed as without merit.  Thus, Hatfield's petition should be dismissed in its entirety with prejudice.

Date:  January 24, 2011                          /s/ *Nancy A. Vecchiarelli*
                                                 United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140**

21

 **(1985), *reh'g denied*, 474 U.S. 1111**.